1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                        EASTERN DISTRICT OF CALIFORNIA
10

11   JASON BELTZ and KELLY BELTZ,              No.  2:15-cv-01731-TLN-CKD

12                  Plaintiffs,

13          v.                                 **ORDER**

14   WELLS FARGO HOME MORTGAGE;
     WELLS FARGO BANK, N.A. (successor
15   by acquisition of Wachovia N.A. and
     World Savings Bank); NBS DEFAULT
16   SERVICES, LLC.; and DOES 1 through
     50, inclusive,
17
                    Defendants.
18

19          This matter is before the Court pursuant to Defendants Wells Fargo Home Mortgage,

20   Wells Fargo Bank, N.A. (successor by acquisition of Wachovia N.A. and World Savings Bank)

21   (hereinafter "Wells Fargo"), NBS Default Services, LLC. ("NBS"), and Does 1 through 50

22   (collectively "Defendants") Motion to Dismiss (ECF No. 4) and Plaintiffs Jason Beltz and Kelly

23   Beltz's Motion for Preliminary Injunction (ECF No. 5).  The parties have both filed oppositions

24   and replies to the aforementioned motions.  Having carefully considered the briefing by both

25   parties, the Court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss

26   (ECF No. 4) and GRANTS Plaintiffs' Motion for Preliminary Injunction (ECF No. 5).

27   ///

28   ///

                                            1

## I.   FACTUAL BACKGROUND

The claims in this case arise from Defendants' alleged conduct in connection with Plaintiffs' residential mortgage loan modification applications.  Plaintiffs purchased their home located at 6504 Upland Court, Rocklin, CA 95677 ("the Subject Property") in 1999.  (ECF No. 1–1 at ¶ 12.)  In 2006, Plaintiffs refinanced their home and continued to make mortgage payments until January 2013.  (ECF No. 1–1 at ¶¶ 12–15.)  In January 2013, Plaintiffs stopped making mortgage payments due to financial troubles.  (ECF No. 1–1 at ¶ 14.)  However, Plaintiffs' financial situation improved later that year and Plaintiffs sought a loan modification with Defendants. (ECF No. 1–1 at ¶ 16.)  In November 2013, Plaintiffs offered to make a lump-sum payment to clear up their arrearages.   (ECF No. 1–1 at ¶ 17.)  However, Wells Fargo representative Gregory Foster told Plaintiffs they should not make that lump-sum payment because it would prevent Plaintiffs from receiving a HAMP loan modification with a 2% interest rate.  (ECF No. 1–1 at ¶ 17.)

Over the next two years, Plaintiffs repeatedly submitted paperwork for a loan modification to no avail.  (ECF No. 1–1 at ¶ 23.)  Despite submitting several completed loan modification packets at Wells Fargo's instruction, the documents were either not received or Plaintiffs were told "the review process need[ed] to be restarted for any number of reasons."  (ECF No. 1–1 at ¶ 23.)  One such time, beginning in February 2014, Wells Fargo sent Plaintiffs a loan modification package encouraging them to apply for mortgage assistance.  (ECF No. 1–1 at ¶ 24.)  By April 2014, Plaintiffs had submitted a completed HAMP modification application.  (ECF No. 1–1 at ¶ 25.)  On June 25, 2014, Plaintiffs received an official denial letter for their HAMP loan modification from Wells Fargo.  (ECF No. 1–1 at ¶ 26.)  However, Plaintiffs contend it was an erroneous denial because it relied on incorrect gross income figures.  (ECF No. 1–1 at ¶¶ 26–29.)  Further, Wells Fargo did not correct its calculations of Plaintiffs' monthly income, despite Plaintiffs informing them of the error.  (ECF No. 1–1 at ¶¶ 28–30.)

Subsequently, in September 2014 Plaintiffs submitted a new loan modification application.  (ECF No. 1–1 at ¶ 31.)  Wells Fargo claimed they never received this application.  (ECF No. 1–1 at ¶ 32.)  Plaintiffs tried contacting Wells Fargo again in January 2015 and were

told to submit another loan modification application.  (ECF No. 1–1 at ¶ 32.)   After doing so, they received a letter from Wells Fargo representative Stephanie Johnson informing Plaintiffs their application had been received.  (ECF No. 1–1 at ¶ 36.)  In May 2015, Ms. Johnson sent Plaintiffs a letter stating certain required documentation was missing from their loan modification application.  (ECF No. 1–1 at ¶ 39.)  Shortly thereafter, on June 5, 2015, Wells Fargo caused a Notice of Trustee's Sale to be recorded and scheduled a sale of Plaintiffs' home for July 1, 2015. (ECF No. 1–1 at ¶ 40.)  Throughout June 2015, Plaintiffs made multiple attempts to contact Wells Fargo's representatives regarding the scheduled sale date of their home.  (ECF No. 1–1 at ¶ 41.) Without any meaningful progress contacting Wells Fargo prior to the July 1 sale date, Plaintiffs filed suit in Superior Court of Placer County.  (*See* ECF No. 1–1.)

Plaintiffs allege seven different causes of action.  First, Plaintiffs allege three instances of intentional misrepresentation by Wells Fargo and its representatives.  (ECF No. 1–1 at ¶¶ 68, 73, 78.)  Second, Plaintiffs allege Wells Fargo negligently misrepresented the same three instances. (ECF No. 1–1 at ¶ 86.)  Third, Plaintiffs allege Defendants were negligent because they had a duty of reasonable care in performing loan modification duties.  (ECF No. 1–1 at ¶ 92.)  Fourth, Plaintiffs assert a promissory estoppel claim because Defendants allegedly promised Plaintiffs a HAMP loan modification with a 2% interest rate and Plaintiffs relied on that promise.  (ECF No. 1–1 at ¶¶ 96, 98.)  Fifth, Plaintiffs allege that Defendants violated California Civil Code § 2923.6 ("Dual–Tracking") when they began the foreclosure process while Plaintiffs allegedly still had a loan modification application under review.  (ECF No. 1–1 at ¶¶ 87–88.)  Sixth, Plaintiffs assert that Defendants violated California Civil Code § 2923.7 because Wells Fargo failed to provide a Single Point of Contact ("SPOC").  (ECF No. 1–1 at ¶ 95.)  Seventh, Plaintiffs claim the above alleged unlawful acts and practices by Defendants constitute unlawful and unfair business practices within the meaning of California Business and Professional Code §17200.  (ECF No. 1– 1 at ¶ 102.)

## II.   PROCEDURAL HISTORY

On June 23, 2015, Plaintiffs filed a Complaint in the Superior Court of Placer County against Defendants.  (ECF No. 1–1.)  Plaintiffs applied for and were granted a Temporary

1    Restraining Order ("TRO") enjoining the foreclosure sale of the Subject Property.  (ECF No. 1–2

2    at 2.)  Defendants did not appear in the state court action.  (ECF No. 1 at 2.)  On August 14, 2015,

3    Defendants filed a Notice of Removal to this Court.  (ECF No. 1.)  On August 20, 2015,

4    Defendants moved to dismiss all of Plaintiffs' claims under Federal Rule of Civil Procedure

5    12(b)(6).  (ECF No. 4.)  In response, Plaintiffs filed a Motion for Preliminary Injunction on

6    August 24, 2015, and an Opposition to the Motion to Dismiss on October 17, 2015.  (ECF Nos. 5

7    & 8.)  On October 17, 2015, Defendants filed their Opposition to Plaintiffs' Motion for

8    Preliminary Injunction.  (ECF No. 8.)

9         **III.    STANDARD OF LAW**

10             A.    Motion to Dismiss

11             A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

12    sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Federal Rule of

13    Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim

14    showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

15    (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice

16    of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S.

17    544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on

18    liberal discovery rules and summary judgment motions to define disputed facts and issues and to

19    dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

20             On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

21    *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

22    reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

23    *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

24    "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

25    relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

26    factual content that allows the court to draw the reasonable inference that the defendant is liable

27    for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

28             Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).  Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

B. <u>Preliminary Injunction</u>

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted). In cases where the movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of scrutiny must apply. *Schrier v. University of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits...so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to

6

1   the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's

2   favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis

3   added).

4   **IV.   ANALYSIS**

5       A.   Motion to Dismiss

6           i.   *Intentional and Negligent Misrepresentation (Counts I & II)*

7       Plaintiffs allege that Defendants either intentionally or negligently misrepresented facts to

8   Plaintiffs, and Plaintiffs relied on those misrepresentations. (ECF No. 1–1 at ¶ 68.) Defendants

9   maintain they did not misrepresent facts, that Plaintiffs failed to plead actual and detrimental

10  reliance, and that Wells Fargo did not owe Plaintiffs a legal duty of care. (ECF No. 4 at 2–4.)

11  Plaintiffs assert that the alleged misrepresentations in the Complaint are factual statements made

12  by Wells Fargo agents, and these agents made the statements without any reasonable grounds for

13  believing their truth. (ECF No. 1–1 at ¶¶ 86–87.)

14      "In all averments of fraud or mistake, the circumstances constituting fraud or mistake

15  shall be stated with particularity." Fed. R. Civ. P. 9(b). "Therefore, in an action based on state

16  law, while a district court will rely on state law to ascertain the elements of fraud that a party

17  must plead, it will follow Rule 9(b) in requiring that the circumstances of the fraud be pleaded

18  with particularity." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 997 (N.D. Cal. 2009); *see

19  also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "[W]hen the claim is

20  'grounded in fraud,' the pleading of that claim as a whole is subject to Rule 9(b)'s particularity

21  requirement." *Marolda*, 672 F. Supp. 2d at 997 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

22  1097, 1104 (9th Cir. 2003)). Rule 9(b) requires the plaintiff to allege "the who, what, when,

23  where, and how" of the alleged fraudulent conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th

24  Cir. 1997). A plaintiff must describe the alleged fraud in specific enough terms "to give

25  defendants notice of the particular misconduct so that they can defend against the charge."

26  *Kearns*, 567 F.3d at 1124. "The requirement of specificity in a fraud action against a corporation

27  requires the plaintiff to allege the names of the persons who made the allegedly fraudulent

28  representations, their authority to speak, to whom they spoke, what they said or wrote, and when

7

1   it was said or written." *Rosal v. First Federal Bank of California*, 671 F. Supp. 2d 1111, 1127

2   (N.D. Cal. 2009) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996)).

3          "Under California law, the elements of intentional misrepresentation are: (1)

4   misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity

5   (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages." *Okun*

6   *v. Morton*, 203 Cal. App. 3d 805, 828 (Ct.App.1988).  "The elements of negligent

7   misrepresentation are similar to intentional fraud except for the requirement of scienter; in a claim

8   for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally

9   false statement, but simply one as to which he or she lacked any reasonable ground for believing

10   the statement to be true." *Charnay v. Cobert*, 145 Cal.App.4th 170, 184–85, (2006).

11                    a.          Plaintiffs Allege Misrepresentation of Facts

12          Plaintiffs assert three different factual misrepresentations in their complaint: (1) Wells

13   Fargo did not fairly review Plaintiffs' numerous loan modification applications in accordance

14   with HAMP guidelines; (2) Wells Fargo's representative Gregory Foster told Plaintiffs not to

15   make a lump-sum payment to cure arrearages because if they did Plaintiffs would be "kicked out

16   of review" and "would not get a permanent loan modification with a 2% interest rate" under

17   HAMP; and (3) Wells Fargo represented that Plaintiffs would qualify for one of their many loan

18   modification programs.  (ECF No. 1–1 at ¶¶ 68, 73, 78.)  Defendants maintain that Wells Fargo

19   did not make any misrepresentations of fact.  (ECF No. 4 at 2–3.)

20          Plaintiffs first allege that Defendants did not fairly review their loan modification request

21   in accordance with HAMP guidelines.  (ECF No. 1–1 at ¶ 68.)  Although Defendants sent

22   Plaintiffs a denial letter on or about June 25, 2014, Plaintiffs assert they were wrongly denied

23   because Defendants erroneously used "a gross miscalculation of Plaintiffs monthly income."

24   (ECF No. 1–1 at ¶ 26–27.)  Plaintiffs further allege that on or about August 5, 2014, Plaintiffs

25   sent a letter to Wells recapping a phone call with its representative Gregory Foster informing him

26   of this gross miscalculation.  (ECF No. 1–1 at ¶ 28.)  However, Plaintiffs assert Defendants did

27   not correct Plaintiffs' monthly income calculations and instead sent Plaintiffs a new loan

28   modification package.  (ECF No. 1–1 at ¶¶ 29–30.)  Plaintiffs allege Wells Fargo's failure to

correct its mistake was material because it was the basis for Plaintiffs' loan modification denial. (ECF No. 1–1 at ¶ 68.)  Defendants merely assert that "Wells Fargo evaluated them under HAMP and sent them a denial letter."  (ECF No. 4 at 3.)  Defendants make no substantive argument as to why Plaintiffs' pleading is deficient, but merely make statements contradictory to Plaintiffs Complaint.  Under a 12(b)(6) motion, Plaintiffs allegations are taken as true.  Therefore, Plaintiffs' allegation that Defendants misrepresented that Plaintiffs would be fairly reviewed for a loan modification under HAMP is sufficient to meet this element.  Thus, Plaintiffs have adequately pled the first alleged misrepresentation.

Second, Plaintiffs allege that Defendants misrepresented that Plaintiffs would receive a 2% interest rate under HAMP.  (ECF No. 1–1 at ¶ 86.)  Plaintiffs allege in November 2013 Wells Fargo's representative Gregory Foster told Plaintiffs that they "should not make a lump sum payment of approximately $18,000 to cure their arrearages because if they did they would be 'kicked out of review' and 'would not get a permanent loan modification with a 2% interest rate' under HAMP."  (ECF No. 1–1 at ¶ 73.)  Despite following these instructions, Plaintiffs assert they "were not granted a HAMP loan modification, an interest rate of 2%, or any other modification."  (ECF 1–1 at ¶ 73.)  Moreover, Plaintiffs contend this statement by Wells Fargo's agent was material because it persuaded Plaintiffs from curing $18,000 in arrearages and concerned their eligibility for a loan modification.  (ECF No. 1–1 at ¶ 73.)  Defendants again only contest the facts by making contradictory statements.  (ECF No. 4 at 4.)  Because Defendants fail to present any arguments other than contradictory facts, Plaintiffs' allegation that Defendants misrepresented that Plaintiffs would receive a 2% interest rate under HAMP is sufficient to meet the first element.  Accordingly, Plaintiffs adequately pled the second alleged misrepresentation.

Thirdly, Plaintiffs allege that Defendants misrepresented "that Plaintiffs would qualify for one of Defendants many loan modification programs."  (ECF No. 1–1 at ¶ 78.)  Plaintiffs contend this was misleading or false because "Plaintiffs were not fairly evaluated for nor placed into any of Defendants home loan modification programs."  (ECF No. 1–1 at ¶ 78.)  This representation was material since it affected Plaintiffs' decision to stick with Wells and not "seek other alternatives to foreclosure."  As such, Plaintiffs adequately pled the third alleged

1    misrepresentation that Defendants misrepresented Plaintiffs would qualify for one of Defendants

2    many loan modification programs.  Therefore, Plaintiffs three alleged instances of false

3    representations meet the first element of intentional or negligent misrepresentation.

4                    b.      Plaintiffs Adequately Allege Actual and Detrimental Reliance

5             Here, Plaintiffs allege the fourth element of justifiable reliance by arguing they "actually

6    relied on [Wells Fargo's] representations [] as they continued their attempts to obtain a loan

7    modification…" and that the reliance was justified because Wells Fargo "was the servicer of

8    [Plaintiffs' loan]," and "had the power to grant Plaintiffs a permanent loan modification."  (ECF

9    No. 1–1 at ¶¶ 81, 89.)  Defendants counter that Plaintiffs failed to plead actual and detrimental

10   reliance because "Wells Fargo was not required to grant Plaintiffs a HAMP loan modification

11   even if they qualified."  (ECF No. 4 at 3.)  However, Defendants' argument misses the point.  It

12   does not matter whether Wells Fargo was obligated to modify Plaintiffs loan or not.  It matters

13   what Wells Fargo allegedly represented they would do for Plaintiffs.  Here, the Complaint alleges

14   sufficient facts to demonstrate that Plaintiffs relied on Wells Fargo's allegedly false

15   representations.  Plaintiffs sent multiple loan modification applications and forewent other

16   alternatives because Wells Fargo allegedly represented to Plaintiffs that they would receive a loan

17   modification.  Therefore, Plaintiffs adequately allege that they reasonably and detrimentally relied

18   on Defendants' statements.

19           Defendants do not raise any arguments against the remaining elements of intentional or

20   negligent misrepresentation in their motion to dismiss.  Defendants have essentially conceded

21   that Plaintiffs have adequately alleged the remaining elements of intentional and negligent

22   misrepresentation.  Therefore, the Court does not discuss these factors.[1]  Defendants' motion to

23   dismiss Plaintiffs' First and Second Causes of Action is DENIED.

24               ii.   Negligence (Count III)

25           Plaintiffs allege that Defendants negligently mishandled Plaintiffs' loan modification

26

27   ---

     [1]        Defendants also maintain that Plaintiffs do not state a claim for negligent misrepresentation because Wells
28   Fargo did not have a legal duty of care.  (ECF No. 4 at 4.)  As discussed, *infra* Section B, the Court rejects this
     position.

1   applications. (ECF No. 1–1 at ¶¶ 92–94.)  Defendants argue that Wells Fargo did not owe

2   Plaintiffs a duty of care in considering their loan modification application.  (ECF No. 4 at 5.)  The

3   Court finds that Plaintiffs have stated a claim for negligence because Defendants owed Plaintiffs

4   a duty of care in considering their loan modification.

5          Negligence requires a showing of: (1) the existence of a duty to exercise due care; (2)

6   breach of that duty; (3) causation; and (4) damages.  *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465,

7   500 (2001).  The question of whether a duty of care exists is a question of law to be determined

8   on a case–by–case basis.  *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62

9   (2013).  In California, generally "a financial institution owes no duty of care to a borrower when

10  the institution's involvement in the loan transaction does not exceed the scope of its conventional

11  role as a mere lender of money."  *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d

12  1089, 1096 (1991).  However, "*Nymark* does not support the sweeping conclusion that a lender

13  never owes a duty of care to a borrower."  *Alvarez*, 228 Cal. App. 4th at 945 (internal quotation

14  marks omitted).  To determine whether a duty of care exists, the Court must balance the *Biakanja*

15  factors:

16          [1] the extent to which the transaction was intended to affect the plaintiff, [2] the
            foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered
17          injury, [4] the closeness of the connection between the defendant's conduct and
            the injury suffered, [5] the moral blame attached to the defendant's conduct, and
18          [6] the policy of preventing future harm.

19          *See Nymark*, 231 Cal. App. 3d at 1098 (citing *Biakanja v. Irving*, 49 Cal. 2d 647, 650

20  (1958)).

21          In *Meixner v. Wells Fargo Bank, N.A.* (Nunley, J.), this Court followed the reasoning in

22  *Alvarez*, and held that under the six factors set forth in *Biakanja*, the lender owed a duty of care to

23  the borrower when considering his loan modification.  *Meixner v. Wells Fargo Bank, N.A.*, 101 F.

24  Supp. 3d 938, 955 (E.D. Cal. 2015).  Defendants ask this Court to reconsider its reasoning in that

25  case.  (ECF No. 4 at 6–8.)  The Court declines to do so.  Defendants do not offer any analysis of

26  the *Biakanja* factors in their motion to dismiss or reply briefs.  Thus, the Court reviews Plaintiffs'

27  arguments and the complaint on its face.  After weighing the six *Biankanja* factors below, the

28  Court finds that Wells Fargo had a duty of reasonable care when considering Plaintiffs loan

1    modification.

2          As to the first factor – the extent to which the transaction was intended to affect the

3    plaintiff – Plaintiff alleges that Defendants treatment of Plaintiffs' loan modification applications

4    was intended to affect whether Plaintiffs received reduced monthly payments, thus, making it

5    more likely for Plaintiffs to cure arrearages that had accumulated during the process.  (ECF No.

6    1–1 at ¶ 92.)  This factor weighs in favor of Plaintiffs and finding a duty of care.

7          As to the second factor, the foreseeability of harm to plaintiff, based on Plaintiff's

8    allegations, the Court finds Defendants could foresee Plaintiffs' inability to receive a loan

9    modification after relying on it because Defendants allegedly conducted an unreasonable review

10   of Plaintiffs' loan modification documents.  (ECF No. 1–1 at ¶ 92.)  As stated in *Garcia v. Ocwen*

11   *Loan Servicing, LLC*, "[a]lthough there was no guarantee the modification would be granted had

12   the loan been properly processed, the mishandling of the documents deprived Plaintiff of the

13   possibility of obtaining the requested relief."  *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10–

14   0290 PVT, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010)).   Therefore, the second favor

15   similarly weighs in favor of Plaintiffs.

16         In regards to the third factor — the degree of certainty that the plaintiff sustained an injury

17   — Plaintiffs allege that due to Defendants' negligence, Plaintiffs suffered injury by being at risk

18   of losing the home they have lived in for nearly fifteen years; they have experienced emotional

19   distress due to the threat of losing their home in which their two minor children reside; and they

20   have experienced reduced credit scores during the loan modification process.  (ECF No. 1–1 at ¶

21   94.)  However, by Plaintiffs' own allegations it appears that Plaintiffs have been living without

22   paying monthly mortgage payments since January 2013.  (ECF No. 1–1 at ¶¶ 14–15.)  Thus, any

23   harm Plaintiffs have suffered may be offset by having the opportunity to live in their home

24   without paying their mortgage.  On balance, any offset is outweighed by Plaintiffs' risk of losing

25   their home, the resulting emotional distress and their reduced credit score.  Therefore, this factor

26   weighs in favor of Plaintiffs.

27         As to the fourth factor — the closeness of the connection between the defendant's conduct

28   and the injury suffered — Plaintiffs' allegations support a finding that there is a close connection

1    between Defendants' conduct and Plaintiffs being denied a loan modification, because

2    Defendants are alleged to be an active participant in handling and reviewing Plaintiffs loan

3    modification applications.  If Defendants unnecessarily delayed the process to hike up fees and

4    prevent modification of the loan, as Plaintiffs allege, then the injuries of increased rates and the

5    potential sale of Plaintiffs home is directly caused by Defendants' actions.  Accordingly, the

6    fourth factor weighs in favor of Plaintiffs.

7         As to the fifth factor — moral blame attached to the defendants' conduct — it is not clear

8    at this point the extent to which moral blame should be applied to Defendants' conduct.

9    However, courts have noted that "it is highly relevant that the borrowers 'ability to protect his

10   own interests in the loan modification process [is] practically nil' and the bank holds 'all the

11   cards.'" *Alvarez*, 228 Cal. App. 4th at 949 (quoting *Jolley v. Chase Home Finance, LLC*, 213

12   Cal. App. 4th 872, 900 (2013)).  "The borrower's lack of bargaining power coupled with conflicts

13   of interest that exist in modern loan servicing" create a moral imperative that those banks holding

14   all the cars exercise reasonable care in their dealings with borrowers.  *Id.*  Therefore, the fifth

15   factor weighs in favor of Plaintiffs.

16        Lastly, the sixth factor, the policy of preventing future harm, weighs in favor of Plaintiffs

17   because the passing of the Homeowner's Bill of Rights "demonstrates a rising trend to require

18   lenders to deal reasonably with borrowers in default to try to effectuate a workable loan

19   modification." *Alvarez*, 228 Cal. App. 4th at 950; *Meixner*, 101 F. Supp. 3d at 955.

20        After carefully balancing the six *Biakanja* factors, the Court finds that Defendants likely

21   owed Plaintiffs a duty of care in considering Plaintiffs' loan modification applications.  While

22   Defendants presented the Court with an exhaustive analysis of why the Court should not apply the

23   *Biakanja* case, Defendants failed to address the deficiencies in the six *Biakanja* factors.

24   Therefore, Defendants' motion to dismiss Plaintiffs third cause of action is DENIED.

25                    *iii.  Promissory Estoppel (Count IV)*

26        Plaintiffs allege they detrimentally relied on Defendants' promises to grant a HAMP loan

27   modification with a 2% interest rate and that Plaintiffs would qualify for one of Defendants many

28   home loan modification programs.  (ECF No. 1–1 at ¶ 96.)  Plaintiffs state they relied on

13

1   Defendants' promises by opting not to pursue other options that were available to them, including

2   seeking to sell their property.  (ECF No. 1–1 at ¶ 100.)  Defendants claim that "[Plaintiffs cannot]

3   identify a 'clear and unambiguous' promise."  (ECF No. 4 at 8.)  Instead, Defendants maintain

4   that "[a]t most, Wells Fargo stated that it would review Plaintiffs for a loan modification and that

5   they might receive a modification if they were eligible."  (ECF No. 4 at 9.)  Further, Defendants

6   claim that Plaintiffs do not demonstrate detrimental reliance because "[t]he only thing [] Plaintiffs

7   did was to **not** try to sell their home."  (ECF No. 4 at 9, emphasis in original.)  Defendants argue

8   this is "a sham" by Plaintiffs, demonstrating a lack of reliance, because Plaintiffs "admit that they

9   did not want to sell their home (Compl. ¶ 35).…"  (ECF No. 4 at 9.)  This Court finds Plaintiffs

10   adequately stated a claim for promissory estoppel because they allege Defendants made a definite

11   and clear promise which Plaintiffs reasonably relied on to their detriment.

12       "Under California law, the elements of promissory estoppel are (1) a promise clear and

13   unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance

14   must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured

15   by his reliance." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012)

16   (citing *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887 (2005)).  "To be enforceable, a promise

17   need only be definite enough that a court can determine the scope of the duty[,] and the limits of

18   performance must be sufficiently defined to provide a rational basis for the assessment of

19   damages." *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 949 (E.D. Cal. 2015)

20   (quotation marks and citations omitted).

21                    a.       Plaintiffs Pled a Clear and Unambiguous Promise

22       A bank's alleged promise to negotiate with a borrower to reinstate and modify a loan if

23   the borrower would forgo a bankruptcy petition is sufficiently clear and unambiguous to trigger

24   promissory estoppel.  *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 221 (2011), as modified

25   (Feb. 9, 2011).  In *Aceves*, a borrower defaulted on her adjustable rate mortgage due to

26   unaffordable monthly payments and initiated bankruptcy proceedings.  *Id.*  The bank informed the

27   borrower they would work to reinstate and modify the loan if the borrower stopped her

28   bankruptcy proceedings.  *Id.*  The court held this statement was clear and unambiguous because it

1  indicated the bank would not foreclose on the borrower's home without first engaging in

2  negotiations to reinstate and modify the loan on mutually agreeable terms.  *Id.* at 226.

3      Here, Defendants representatives both "routinely assured the Plaintiffs … they would

4  qualify for one of Defendants home modification programs" and "that Plaintiffs mortgage loan

5  interest rate would be reduced to two (2) percent."  (ECF No. 1–1 at ¶¶ 21–22.)  Similar to

6  *Aceves*, Wells Fargo's representative Gregory Foster instructed Plaintiffs not to cure arrearages to

7  continue pursuing a HAMP modification with a two percent interest rate.  (ECF No. 1–1 at ¶ 17.)

8  Like in *Aceves*, these statements indicate Wells Fargo would work with Plaintiffs to modify their

9  loan before initiating the foreclosure process.  Thus, these statements are clear, unambiguous, and

10  definite enough to meet the requirements of promissory estoppel on a motion to dismiss.

11  b.  Plaintiffs Pled Facts Demonstrating Reliance

12      Defendants assert that Plaintiff failed to change their position by relying on Defendants'

13  promises.  (ECF No. 4 at 9.)  However, Defendants do not make any other arguments with respect

14  to the remaining three factors of promissory estoppel.  Plaintiffs allege Wells Fargo's statements

15  resulted in Plaintiffs continuing to submit loan modification applications rather than pursing other

16  alternatives to avoid foreclosure.  (ECF No. 1–1 at ¶ 100.)  Plaintiffs' actions also resulted in

17  Plaintiffs failing to "cur[e] the[ir] arrearages when they had the financial ability to do so."  (ECF

18  No. 1–1 at ¶ 100.)  Taking these statements as true, Plaintiffs detrimentally relied on Defendants

19  statements by foregoing other potential options.  Therefore, Plaintiffs have adequately pled this

20  element.

21  c.  Plaintiffs Pled that Reliance Was Reasonable and Foreseeable

22      As mentioned above, Defendants did not make any arguments regarding whether the

23  reliance was reasonable and foreseeable.  Instead, Defendants made a sweeping argument that

24  Plaintiffs did not change their position by relying on Defendants' statements.  However, Wells

25  Fargo should have foreseen this reliance because it's reasonable for a borrower to listen to the

26  advice of their servicer even more so when the servicer provides compelling reasons to opt for

27  modification negotiations.  *See Aceves*, 192 Cal. App. 4th at 228 (holding the plaintiff's reliance

28  was reasonable because the bank had given the plaintiffs "compelling reasons to opt for

1   negotiations with the bank instead of seeking bankruptcy relief").  Therefore, Plaintiffs

2   adequately pled that their reliance was reasonable and foreseeable.

3                              d.      Plaintiffs Pled an Injury Arising Out of Their Reliance

4          Plaintiffs allege they suffered "…excess arrearages, late fees and penalties…[,] forewent

5   seeking other remedies and spent time[,] money and energy in [their] attempts to obtain a loan

6   modification" in reliance on Defendants' promises.  Defendants do not contest this allegation and

7   the Court must accept it as true.  Accordingly, Plaintiffs adequately pled an injury arising out of

8   their reliance.

9          As discussed above, Plaintiffs adequately pled the elements of promissory estoppel in

10  order to overcome a motion to dismiss.  Therefore, the Court finds that Plaintiffs have stated a

11  claim for promissory estoppel, and Defendants' motion to dismiss Plaintiffs' Fourth Cause of

12  Action is DENIED.

13                        *iv.  Violation of Civil Code § 2923.6 (Count V)*

14         Plaintiffs allege they submitted a complete application for a first lien loan modification at

15  Defendants direction.  (ECF No. 1–1 at ¶ 86.)  On or about April 1, 2015, Defendants sent a letter

16  to Plaintiffs acknowledging receipt of that application and stating they would review it.  (ECF No.

17  1–1 at ¶ 86.)  Yet, on or about June 5, 2015, Defendants caused a Notice of Trustee's Sale to be

18  recorded and scheduled a sale date for Plaintiffs home at a trustee's foreclosure sale on July 1,

19  2015, without rendering a decision on the April 1, 2015 submission.  (ECF No. 1–1 ¶ 88.)

20  Plaintiffs argue this constitutes "dual–tracking" within the meaning of Section 2923.6(c).

21         However, Defendants submitted a 2011 "Modification Agreement," signed by Plaintiffs

22  and Mary C. Reeder a "Senior Vice President" at Wells Fargo, with their Motion to Dismiss.[2]

23  (ECF No. 4–1 at 6.)  In doing so, Defendants assert that Section 2923.6 does not apply in this case

---

24  [2]        Defendants request the Court take judicial notice of a Modification Agreement date June 14, 2011, and
25  signed by Plaintiffs, a Deed of Trust dated August 25, 2006 and recorded in the Placer County Recorder's Office as
    DOC-2006-0099482, and an Adjustable Rate Mortgage Note dated August 25, 2006 and signed by Plaintiffs.  (Req.
26  for Judicial Notice, ECF No. 4-1.)  Under Federal Rules of Evidence § 201 a court can take judicial notice of a
    document when the subject "can be accurately and readily determined from the sources whose accuracy cannot
27  reasonably be questioned."  For the reasons stated in Defendants' request and noting no opposition by Plaintiffs to
    the request, the Court GRANTS Defendants' request, and takes judicial notice of the attached exhibits pursuant to
28  Federal Rules of Evidence § 201 (ECF No. 4-1 at 5–35).

1  because Plaintiffs' defaulted on an existing loan modification (that is, the 2011 agreement).  (ECF

2  No. 4 at 18.)  Thus, Defendants contend the claim is barred by the plain language of the statute

3  because the alleged dual–tracking would have occurred when Plaintiffs were negotiating their

4  second modification.  (ECF No. 4 at 18.)  Plaintiffs freely acknowledge the 2011 modification's

5  existence in their Opposition to the Motion to Dismiss.  (ECF No. 8 at 16.)  Instead of contesting

6  its authenticity, Plaintiffs contend it's irrelevant because the HBOR went into effect January 1,

7  2013, and the previous modification agreement was in 2011.  (ECF No. 8 at 16.)  However, the

8  Court finds that Plaintiffs were not protected by the HBOR's "dual–tracking" provision because

9  Plaintiffs had already received a previous modification and did not show a material change in

10  their financial situation.

11        Under California Homeowner's Bill of Rights ("HBOR"), "a mortgage servicer,

12  mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice

13  of sale, or conduct a trustee's sale, while the [borrower's] complete first lien loan modification

14  application is pending."  Cal. Civ. Code § 2923.6(c).  This activity, in which a lender engages in

15  loan modification negotiations while at the same time moving toward a non–judicial foreclosure

16  sale, is known as "dual tracking."  *Haltom v. NDEx W., LLC*, No. 2:16–cv–00086–TLN–KJN,

17  2016 U.S. Dist. LEXIS 5656, at *6 (E.D. Cal. Jan. 15, 2016).  The HBOR prohibits lenders from

18  engaging in dual-tracking.  *Id.*  However, if "[t]he borrower accepts a written first lien loan

19  modification, but defaults on, or otherwise breaches the borrower's obligations under, the first

20  lien loan modification" the servicer may record a notice of default or notice of sale or conduct a

21  trustee's sale.  Cal. Civ. Code § 2923.6(c)(3).  Additionally,

22

23        [T]he mortgage servicer shall not be obligated to evaluate applications from
          borrowers who have already been evaluated or afforded a fair opportunity to be
24        evaluated for a first lien loan modification prior to January 1, 2013 …. unless
          there has been a material change in the borrower's financial circumstances since
25        the date of the borrower's previous application and that change is documented by
          the borrower and submitted to the mortgage servicer.
26

27  Cal. Civ. Code § 2923.6(g); *see also Greene v. Wells Fargo Bank, N.A.*, No. 15–CV–00048–JSW,

28

1  2016 WL 360756, at *3 (N.D. Cal. Jan. 28, 2016); *Gilmore v. Wells Fargo Bank N.A.*, 75 F.

2  Supp. 3d 1255, 1263 (N.D. Cal. 2014); *Rockridge Trust v. Wells Fargo, N.A.*, 985 F.Supp.2d

3  1110 (N.D. Cal. 2013) (Dual tracking and notice provisions of HBOR did not apply to borrower

4  who had already been evaluated for loan modification prior to date set by statute and did not

5  experience material change in his financial circumstances or notify assignee of deed of trust or

6  loan servicer of any change).

7        Here, as mentioned above, Plaintiffs do not contest the existence of the 2011 Modification

8  Agreement.  Plaintiffs' defaulted on this 2011 loan modification agreement and the claims sought

9  herein arise from Plaintiffs' efforts between 2013 and 2015 to modify the 2011 agreement for

10 more favorable terms.  Thus, the alleged "dual–tracking" did not arise from Plaintiffs' "first lien

11 loan modification…opportunity," but rather an opportunity to modify a preexisting modification

12 agreement.  Plaintiffs' argument that the Modification Agreement is dated prior to the January 1,

13 2013, date set in § 2923.6 is unavailing.  Plaintiffs fail to plead any material changes in their

14 financial situation that were documented by the borrower and submitted to the mortgage servicer.

15 Thus, Defendants were not obligated to evaluate Plaintiffs' applications for modification.

16       Therefore, the Court finds that Plaintiffs have not stated a claim for violation of § 2923.6,

17 and Defendants' motion to dismiss Plaintiff's Fifth Cause of Action is GRANTED with leave to

18 amend to allege documentation and submission of any material change in Plaintiffs' financial

19 situation.

20         *v.   Violation of Civil Code § 2923.7 (Count VI)*

21       Defendants contend that Plaintiffs' allegations show that Wells Fargo assigned various

22 representatives to Plaintiffs' claims.  (ECF No. 4 at 10.)  Defendants further assert that the code

23 section permits for a team of service providers and thus, having multiple representatives assisting

24 Plaintiffs did not violate § 2923.7.  (ECF No. 4 at 10.)  Plaintiffs argue that Defendants miss the

25 point of Plaintiffs' allegations.  (ECF No. 8 at 12.)  Plaintiffs state they were not asserting that

26 multiple people could not contact them, but rather that certain requirements of § 2923.7, such as

27 notifying Plaintiffs of what Documents were missing to complete the applications, were not

28 satisfied by any of the contact points.  (ECF No. 8 at 13.)  In their reply, Defendants contend that

the Complaint "consists of little more than conclusory allegations and statements of law." (ECF No. 11 at 9.)

The pertinent provisions of Section 2923.7 read:

(a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

(b) The single point of contact shall be responsible for doing all of the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

(c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.

(d) The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor.

(e) For purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

Cal. Civ. Code § 2923.7.

> (a) Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, *2923.6*, *2923.7*, 2924.9, 2924.10, 2924.11, and 2924.18 *shall apply only to first lien mortgages or deeds of trust* that are secured by owner–occupied residential real property containing no more than four dwelling units. For these purposes, "owner–occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

Cal. Civ. Code § 2624.15 (emphasis added).  *Rockridge Trust v. Wells Fargo, N.A.*, 985 F.Supp.2d 1110 (N.D.Cal., 2013) (finding a borrower did not adequately plead its claim against loan servicer for violating single–point–of–contact provision of the HBOR because the borrower failed to allege any damages incurred as a result of the alleged violation).

Here, Plaintiffs plead conclusory statements of law.  (*See* ECF No. 1–1 at ¶ 95.)  Even under the liberal pleadings standards of a Rule 12(b)(6) motion, Plaintiffs are required to show more than "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Moreover, despite mere legal recitation of the statutory language, Plaintiffs fail to show any actual damages incurred by violation of the statute.  *See Rockridge Trust*, 985 F. Supp. 2d at 1151–52.  Absent a showing of harm or something more than legal conclusions, Plaintiffs have failed to adequately plead a violation of Section 2923.7.

Therefore, the Court finds that Plaintiffs have not stated a claim for violation of Section 2923.7, and Defendants' motion to dismiss Plaintiff's Sixth Cause of Action is GRANTED with leave to amend.

### vi.  *Unfair Business Practices (Count VII)*

Defendants assert that Plaintiffs' Seventh Cause of Action is deficient because the claim relies on the other claims which are equally deficient.  (ECF No. 4 at 11.)  Defendants further argue that Plaintiffs cannot state a claim because they do not plead an available remedy.  (ECF No. 4 at 11.)  Plaintiffs contend that they sufficiently plead allegations of unfair practices and therefore the count may not be dismissed because the unfair practice prong requires a determination of fact not to be determined in a motion to dismiss.  (ECF No. 8 at 14.)  Plaintiffs

1  further assert that their allegations of intentional and negligent misrepresentation are sufficient to

2  demonstrate fraud as described under the Unfair Competition Law.  (ECF No. 8 at 14.)

3  Defendants counter that Plaintiffs admit the claim is duplicative by relying on other causes of

4  action to prove the unfair and fraudulent aspects of the claim.  (ECF No. 11 at 9.)

5           "To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or

6  fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising."

7  *Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003); *see also*

8  Cal. Bus. & Prof. Code § 17200.  In sum, an act violates the UCL if it is "unlawful," "unfair" or

9  "fraudulent."  *Rubio v. Capitol One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010).  "[A]n action

10  based on [the UCL] to redress an unlawful business practice 'borrows violations of other laws and

11  treats these violations . . . as unlawful practices, independently actionable under section 17200 et

12  seq. and subject to the distinct remedies provided thereunder."  *Farmers Ins. Exchange v.*

13  *Superior Court*, 2 Cal. 4th 377, 383 (1992).  To establish standing to assert a UCL claim, a

14  plaintiff must have "suffered injury in fact and . . . lost money or property as a result of the unfair

15  competition."  *Id.* at 1203–04 (quoting Cal. Bus. & Prof. Code § 17204).

16           As to the first element — the existence of an unlawful, unfair or fraudulent business act or

17  practice — the Court above found that Plaintiffs have adequately pled intentional and negligent

18  misrepresentation.   A misrepresentation by definition is a false representation, concealment or

19  nondisclosure and courts classify misrepresentation as an actionable fraud.  *Okun*, 203 Cal. App.

20  3d at 827–28 (using the term "actionable fraud" to describe a claim for intentional

21  misrepresentation).  Based on the above mentioned misrepresentations, namely that Defendants

22  misrepresented whether Plaintiffs would receive a 2% interest rate under HAMP and whether

23  Plaintiffs would qualify for one of Defendants' loan modification programs, Plaintiffs have

24  adequately pled a fraudulent business act.

25           With regards to the second element, suffering injury in fact and lost money or property,

26  Plaintiffs allege that they suffered injury because they experienced reduced credit scores during

27  the loan modification process.  (ECF No. 1–1 at ¶ 94.) Plaintiffs also allege damages with respect

28  to an increased amount of arrears, attorney's fees and cost of litigation, and money spent during

1   the modification process.  (ECF No. 1–1 at ¶ 105.)  "[D]amage to credit is a 'loss of money or

2   property' within the meaning of the UCL."  *Rubio*, 613 F.3d at 1204.  Because damage to credit is

3   considered loss of money or property for the purposes of the UCL, Plaintiffs have adequately pled

4   the second element of the UCL claim.

5         Therefore, the Court finds that Plaintiffs have stated a claim for violation of Section

6   17200, and Defendants' motion to dismiss Plaintiffs' Seventh Cause of Action is DENIED.

7                   *vii. Federal Preemption*

8         Defendants assert that Plaintiffs claims are preempted by the Home Owners' Loan Act

9   ("HOLA"), because the original loan was obtained from World Savings, a federal savings bank.

10   (ECF No. 4 at 11–12.)  Defendants argue that preemption under HOLA attaches to the loan and

11   continues with the loan even if the new bank would ordinarily not be granted protection under

12   HOLA.  (ECF No. 4 at 12.)  Defendants support their position by citing a U.S. Treasury's Federal

13   Home Loan Bank Board opinion letter ("Opinion letter").  The opinion letter provided that it was

14   the Board's "opinion that [HOLA] preemption would exist regardless of whether the loans in

15   question are sold by the federal association to a third party."  (ECF No. 4 at 12 (citing Op. Gen.

16   Counsel, FHLBB (Aug. 13, 1985), *available at* 1985 FHLBB LEXIS 178, at *5).)  Defendants

17   argue the opinion letter demonstrates federal regulators' intent that HOLA preemption survive the

18   sale or transfer of federal savings banks.  (ECF No. 4 at 13.)  Defendants further contend that the

19   parties agreed that HOLA would apply in the loan documents and that HOLA serves to preempt

20   each state law claim.  (ECF No. 4 at 14–19.)

21         The Court notes that Defendants cite a multitude of cases to support their proposition.

22   Those cases "have allowed successor entities not subject to HOLA to assert HOLA preemption

23   where the loan at issue originated with a federal savings bank."  *Zappia v. World Sav. F.S.B.*, No.

24   14-1428, 2015 WL 9473641, at *7 (S.D. Cal. Dec. 28, 2015).  However as another court put it,

25   "[t]hese courts appear to have concluded that HOLA applied simply because the loan at issue

26   originated with the FSA.  They do not articulate any consideration of the implications of targeting

27   the bank's post-merger or successive conduct."  *Narvasa v. U.S. Bancorp*, No. 2:15-cv-02369-

28   KJM-EFB, 2016 WL 4041317, at * 3 (E.D. Cal. July 28, 2016).

On the other hand, Plaintiffs argue that their claims are not preempted.  Plaintiffs point out that Defendants cite a string of nonbinding case law which the Ninth Circuit has not yet ruled on. (ECF No. 8 at 14.)  Plaintiffs assert that the cases are all distinguishable because they focus on the original loan and single subsequent loan modification.  However, Plaintiffs argue that they are relying on the loan modification agreement entered into after World Savings Bank transferred its rights to Wells Fargo.  (ECF No. 8 at 15.)  Plaintiffs further assert that all of the wrongful conduct alleged against Wells Fargo occurred from 2013 to 2015, well after Wachovia merged with Wells Fargo.  In support of their position, Plaintiffs cite a string of cases which demonstrate that other courts have "questioned the notion of allowing a successor party . . . to assert HOLA preemption, especially when the wrongful conduct alleged occurred after the federal savings association or bank ceased to exist."  (*See* ECF No. 8 at 15); *see also Rijhwani v. Wells Fargo Home Morg., Inc.*, No. No 13–05881, 2014 WL 890016, at *7 (N.D. Cal. Mar. 3, 2014); *Cerezo v. Wells Fargo Bank*, No. 13–1540, 2013 WL 4029274, at *2–4 (N.D. Cal. Aug. 6, 2013); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1107– 08 (N.D. Cal. 2013); *Hopkins v. Wells Fargo Bank, N.A.*, No. 13–00444, 2013 WL 2253837, at *3 (E.D. Cal. May 22, 2013).

"[T]he growing trend amongst district courts in the Ninth Circuit appears to be to find that HOLA preemption only applies to conduct arising before a federal savings bank merged with a national bank association."  *Harris v. Wells Fargo Bank, N.A.*, No. 5:16-CV-00645-CAS(KKx), 2016 WL 3410161, at *8 (C.D. Cal. June 15, 2016).  The Court is likewise persuaded that HOLA preemption should not apply to conduct solely perpetrated by Wells Fargo or its representatives after Wachovia merged into Wells Fargo.  Here, Plaintiffs allege that Wells Fargo or its representative misrepresented information to them between 2013 and 2015, long after Wachovia merged with Wells Fargo.  Plaintiffs do not assert any claims against the World Savings Bank, Wachovia, or their representatives arising before the merger.  Accordingly, HOLA does not preempt Plaintiff's California law claims.

    B.    Preliminary Injunction

Plaintiffs assert they are entitled to a preliminary injunction enjoining Defendants from conducting a trustee's sale of Plaintiffs' residence located at 6504 Upland Court, Rocklin, CA

1    95677.  Plaintiffs claim an injunction should issue because they meet the four criteria for relief:

2    (1) they are likely to succeed on the merits of their claims; (2) in the absence of a preliminary

3    injunction, Plaintiffs will suffer irreparable harm because they would lose their family home; (3)

4    the balance of equities favors granting injunctive relief because the loss of a home is of

5    substantially greater hardship than the financial loss the Bank would suffer if a sale was

6    postponed; and (4) an injunction is in the public interest because a foreclosure sale can negatively

7    impact the surrounding households and communities.  (Pls.' Mot. for Prelim. Inj., ECF No. 5 at

8    6–20.)

9         Defendants argue that Plaintiffs are not entitled to a preliminary injunction because they

10   do not satisfy any of the requirements.  (Dfts.' Opp'n, ECF No. 9 at 6.)  Defendants assert that

11   Plaintiffs' claims are moot, dual-tracking does not apply, and that there is no legal requirement of

12   a loan modification.  (ECF No. 9 at 9–13.)  Defendants contend that Plaintiffs have not paid loan

13   payments in almost two years and thus the balance of equities tips more in favor of Defendants.

14   (ECF No. 9 at 14.)  Defendants further argue that denial of a later request for loan modification

15   eliminates the threat of future imminent harm to Plaintiffs.  (ECF No. 9 at 15.)  Lastly,

16   Defendants assert that an injunction is not in the public interest because the case only concerns

17   Plaintiff and Wells Fargo and has no effect on third parties.  (ECF No. 9 at 16.)

18              *i.    Likelihood of Success on the Merits*

19        Plaintiffs have the burden to show that they are likely to succeed on the merits of their

20   claims against Defendants.  To succeed, Plaintiffs must be able to show that Defendants

21   intentionally or negligently misrepresented information, that Defendants were negligent, that they

22   detrimentally relied on Defendants' promises, that Defendants violated California civil Code §§

23   2923.6 or 2963.7, or that Defendants actions violated California's laws against unfair business

24   practices.  As noted above, Plaintiffs cannot maintain an action for violation of sections 2923.6

25   and 2923.7.  The Court notes that Defendants do not discuss the likelihood of success on any of

26   the remaining claims except to discard the negligence claim in a passing footnote.  Nevertheless,

27   Plaintiffs have demonstrated a likelihood of success on the merits on at least their Promissory

28   Estoppel claim.

24

To establish a claim for promissory estoppel, Plaintiffs must demonstrate: (1) the existence of a promise; (2) that they reasonably relied on that promise; (3) that the Defendants could foresee Plaintiffs' reliance; and (4) the reliance resulted in injury. *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 225 (2011). Plaintiffs allege that Defendants promised they would be granted a HAMP loan modification, and that Plaintiffs would qualify for one of many loan modification programs. (ECF No. 5-1 at 14.) Plaintiffs allege they relied on Defendants promises by continuing their attempts to obtain a loan modification rather than exploring alternative remedies. (ECF No. 5-1 at 14.) Plaintiffs allege their reliance was reasonable and foreseeable because Defendants had the ability to modify the loan and continually represented that Plaintiffs would qualify for a loan modification. (ECF No. 5-1 at 14.) Plaintiffs argue they suffered damages in that they "accumulated excess arrearages, late fees and penalties, [and] forewent seeking other remedies." (ECF No. 5-1 at 14.)

For the reasons stated in the Court's discussion of the motion to dismiss, Plaintiffs have demonstrated a likelihood of success on the merits for their promissory estoppel claim.

### ii. Irreparable Harm

"Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury is likely in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 22). Plaintiffs are asking for injunctive relief to stop the foreclosure of their home. Plaintiffs contend that if Wells Fargo is permitted to foreclose on the property prior to the resolution of this case then they will be without adequate compensation for their damages if Plaintiffs succeed on the merits of their claims. (ECF No. 5-1 at 19.) The Court agrees. Real property is considered unique and "[i]n the case of a wrongful foreclosure and sale, money compensation would not provide an adequate remedy to plaintiff." *Friedman v. Wells Fargo Bank N.A.*, CV 14-00123 BRO (PLAx), 2014 WL 12572928, at *2 (C.D. Cal. Jan. 23, 2014); *see also* Cal. Civ. Code § 3387 ("It is presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation."). Thus, this factor weighs in favor of enjoining Defendants from foreclosing on the property.

### iii. Balance of Equities

"The purpose of preliminary injunctive relief is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined." *Heflebower v. U.S. Bank Nat. Ass'n*, No. CV F 13–1121 LJO MJS, 2013 WL 3864214, at *18 (E.D.Cal. July 23, 2013) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).  A court balancing the equities will look to possible harm that could befall either party.  *See CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) *aff'd*, 348 Fed. Appx. 288 (9th Cir. 2009).  Here, Plaintiffs allege that Defendants intentionally and negligently misrepresented information to them.  In essence, Plaintiffs allege that Defendants acted fraudulently in their dealings with Plaintiffs.   The Court finds that if such facts are true, Defendant should not benefit from its actions by being allowed to foreclose on the property.  Furthermore, the Court is not swayed by Defendants' argument that Plaintiffs' failure to make loan payments in over two years and Defendants continuing to hold a likely depreciating security interest are sufficient hardships to outweigh the potential loss of a home.  Looking at the harm to both parties, causing a slight delay of the Defendant's sale of the property is greatly outweighed by Plaintiff's potential loss of their home if the foreclosure is wrongful.  Therefore, this factor weighs in favor of granting a preliminary injunction.

       *iv.*    *Public Interest*

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 376–77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  "The public interest analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Indep. Living Ctr., So. Cal. v. Maxwell-Jolly*, 572 F.3d 644, 659 (2009) (internal quotation marks and citations omitted), *vacated and remanded on other grounds*, — U.S. —, 132 S.Ct. 1204 (2012).  The public interest prong primarily addresses the impact of an injunction on non-parties. *Bernhardt v. Los Angeles Cnty.*, 339 F. 3d 920, 931–32 (9th Cir. 2003).  The California Legislature thought that the protection of the rights of homeowners during their loan modification

26

1  process was significant enough to pass laws to protect those individuals.  *See* California

2  Homeowners' Bill of Rights, codified at Cal. Civ. Code §§ 2920.5, 2923.4–.7, 2924, 2924.9–.12,

3  2924.15, 2924.17–.20.  The public interest favors vindicating the Legislature's intent "to have

4  individual borrowers and lenders 'assess' and 'explore' alternatives to foreclosure."  *Magana v.*

5  *Wells Fargo Bank, N.A.*, No. C 11–03993 CW, 2011 WL 4948674, at *2 (N.D. Cal. Oct.18, 2011)

6  (quoting *Mabry v. Superior Court*, 185 Cal. App. 4th 201, 223 (2010)).  These protections include

7  staying foreclosure proceedings during the time that a mortgage modification application is

8  pending.  See Cal. Civ. Code § 2924.18 (2014).  Although the Court has dismissed without

9  prejudice Plaintiffs' HBOR claims above, the spirit of the HBOR still holds true.  Plaintiffs'

10  remaining claims highlight the same potential issues of fraudulent actions by lenders that the

11  HBOR intended to protect.   The Court will not attach such a meaning to claims not explicitly

12  arising out of the HBOR, but acknowledges the similarities.

13        However, other courts have recognized that foreclosures adversely impact households and

14  communities and there is "a strong public interest in preventing unlawful foreclosures."  *Sharma*

15  *v. Provident Funding Assocs., LP*, No. 09-5968 VRW, 2010 WL 143473, at *2 (N.D. Cal. Jan. 8,

16  2010).  Viewing this decision in conjunction with the intention behind the HBOR, the Court finds

17  that this factor also weighs in favor of Plaintiffs.

18        Weighing the four factors, the Court hereby GRANTS Plaintiffs' Motion for a Preliminary

19  Injunction.

20              *v.      Payment of Bond*

21        The Court waives the discretionary bond requirement set forth in Federal Rule of Civil

22  Procedure 65(c).  *See Governing Council of Pinoleville Indian Community v. Mendocino Cnty.*,

23  684 F. Supp. 1042, 1047 (N.D. Cal. 1988) (citing *People of California v. Tahoe Regional*

24  *Planning Agency*, 766 F. 2d 1319, 1325–26 (9th Cir. 1985)) ("[C]ourts have discretion to excuse

25  the bond requirement....").  First, the Court finds that Defendants are adequately protected by the

26  security interest in Plaintiffs' property.  *See Jorgensen v. Cassiday*, 320 F. 3d 906, 919 (9th Cir.

27  2003) ("The district court may dispense with the filing of a bond when it concludes there is no

28  realistic likelihood of harm to the defendant from enjoining his or her conduct.");  *see also*

27

1  *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096, 1116 (C.D. Cal. 2007) ("A

2  bond may not be required, or may be minimal, when the harm to the enjoined party is slight or

3  where the movant has demonstrated a likelihood of success."). Second, the Court finds that,

4  given Plaintiffs' current financial situation, they would be unable to pay the bond, and thus would

5  be precluded from judicial review. *See Mendocino Cnty.*, 684 F. Supp. at 1047 (holding that it is

6  appropriate to waive the bond requirement where "requiring the security would deny access to

7  judicial review.). Finally, "as a result of the parties' ongoing financial relationships, the bond

8  requirement is also properly waived since defendants are capable of recouping any costs or

9  damages resulting from the wrongful issuance of the injunction." *California Hosp. Ass'n v. Max-*

10  *well-Jolly*, 776 F. Supp. 2d 1129 (E.D. Cal. 2011) (citing *United States v. Bedford Assocs.*, 618 F.

11  2d 904, 916–17 (2nd Cir. 1980)). Accordingly, the Court waives the bond requirement.

12        **V.      CONCLUSION**

13        For the foregoing reasons, the Court hereby orders as follows:

14        1.   Defendants' Motion to Dismiss Claims 1 and 2 is DENIED;

15        2.   Defendants' Motion to Dismiss Claim 3 is DENIED;

16        3.   Defendants' Motion to Dismiss Claim 4 is DENIED;

17        4.   Defendants' Motion to Dismiss Claim 5 is GRANTED with leave to amend;

18        5.   Defendants' Motion to Dismiss Claim 6 is GRANTED with leave to amend;

19        6.   Defendants' Motion to Dismiss Claim 7 is DENIED.

20        7.   Plaintiffs' Motion for Preliminary Injunction is GRANTED.

21  Plaintiffs are granted thirty (30) days from the date of this order to file a First Amended

22  Complaint.

23        IT IS SO ORDERED.

24

25  Dated: February 27, 2017

26

27                                          Troy L. Nunley
                                            United States District Judge

28